IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALAN WADE JOHNSON § | | |
| TDCJ-CID NO. 660513 § | | |
| v. § | | C.A. NO. C-11-015 |
| § | | |
| RICK THALER § | | |

**OPINION AND ORDER GRANTING**
**RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Petitioner is a state prisoner currently incarcerated at the McConnell Unit in Beeville, Texas. On January 24, 2011, he filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging prison disciplinary proceedings. (D.E. 1). Pending is Respondent's motion for summary judgment. (D.E. 19). For the reasons stated herein, the motion is granted and the petition dismissed.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where the conviction was obtained. Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2002). Petitioner is confined in Beeville, Texas. (D.E. 1). Jurisdiction is, therefore, proper in this Court. 28 U.S.C. § 124(b)(6). After consent by the parties, (D.E. 11, 14), the case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 16); see also 28 U.S.C. § 636(c).

## II. BACKGROUND

On December 20, 2007, Officer Phoebe Williams completed an offense report, relating that on the previous day she had opened a package addressed to Petitioner at the mail-room purportedly containing leather products for his use at the leather craftshop, and found fifty cans

of chewing tobacco. Disciplinary Hearing Record ("DHR"), at 6. A preliminary investigation report indicated that Petitioner responded to the charge by claiming that the package "wasn't for [him]." Id.

On January 2, 2008, a hearing was held regarding the charge, at which Petitioner pled not guilty. Id. at 2-3. He submitted an affidavit, swearing that he had no knowledge of the tobacco, was not aware who sent it, and had no involvement in any smuggling schemes. Id. at 2, 8. He asserted that his "name was used solely as a patsy." Id. at 8. Petitioner further suggested that the investigation into the package had been improperly conducted, as the Texas Department of Criminal Justice ("TDCJ") should have waited to see how the package would be processed in order to catch the true culprits. Id. He argued that in light of the strict security procedures for incoming mail, a staff member would have to be involved in any smuggling scheme that made use of the prison mailing system. Id. at 8-9. Finally, Petitioner contended that the failure to follow the normal procedures to detect TDCJ officials' involvement stemmed from animus at him for pending federal litigation. Id. at 9.

At the January 2, 2008 hearing, Petitioner also read a statement, reiterating his innocence and noting that he could not have been guilty of possessing the tobacco products because the package had been intercepted before he had ever even seen it. Id. at 10. He added that there was no evidence he had ordered the tobacco, or had any knowledge it was being sent to him. Id. He asked for clarification regarding how the offense was being applied to him and regarding TDCJ policy for defining "possession" in contraband cases. Id. at 11.

Inmate James Soileau submitted a witness statement to the disciplinary hearing officer, averring that he did not believe Petitioner "would have done something like" committing the

charged offense. Id. at 12. Inmate Gary Myers submitted a witness statement indicating that Offender Staggs, a prisoner who worked as a janitor at the craftshop, admitted to him that he was having tobacco sent in under Petitioner's name without his knowledge. Id. at 13. Officer Williams submitted a statement that the package was in a Tandy Leather Box, and that it contained three different types of leather and fifty cans of tobacco. Id. at 15. She noted that her suspicions had been aroused by the fact that Petitioner had not ordered a product from Tandy in more than seven years. Id. Officers Harbin and Williams submitted separate statements regarding the behavior of Offender Staggs, both suggesting for various reasons that he was involved in the tobacco smuggling scheme. Id. at 16-17.

At the hearing, each of the written statements were read aloud on the record and Officer Williams testified regarding the charge. Petitioner drafted several questions that were then read to Officer Williams by his counsel substitute, mainly inquiring into the procedures concerning the mail-room and emphasizing that he would not have been able to retrieve the tobacco prior to extensive security checks by TDCJ personnel. After Officer Williams testified, Petitioner read a closing statement, reiterating that he was never in possession of the contraband and that he never had access to it. A TDCJ official responded that the prison's contraband prohibition encompassed a charge of intent to possess a banned object, and that such an intent was apparent from the fact that the package was addressed to him. Petitioner disagreed with that interpretation of the rule and suggested that he never received notice that he was being charged with what amounted to conspiracy, and that a conviction would therefore violate his due process rights.

Petitioner was convicted and punished with a reduction in class from S3 to L1 as well as the loss of forty-five commissary days and two-months visiting privileges, and the imposition of

forty-three special cell restriction days and thirteen days of solitary confinement. Id. at 2.

On January 3, 2008, Petitioner appealed the conviction in a Step 1 grievance, complaining that there was no evidence to support the charge because he never assumed control of the tobacco, and alleging that the charge had been fabricated out of retaliation at his pending litigation. Disciplinary Grievance Record ("DGR"), at 1-2. He requested that the offense be expunged and his privileges restored, and that he not suffer any further retaliation. Id. at 2. On January 10, 2008, Warden Bell denied the appeal, noting that the evidence had been sufficient and "that the existence and nature of items was satisfactorily established by a thorough description in the offense report." Id.

On January 29, 2008, Petitioner filed a Step 2 grievance, reiterating his complaints with the conviction. DGR, at 3-4. The appeal was denied on February 14, 2008. Id. at 4. On October 24, 2008, Petitioner filed a civil rights action regarding the conviction pursuant to 42 U.S.C. § 1983 in the Houston Division of the Southern District of Texas. Johnson v. Livingston, C-08-3222 (S.D. Tex.). On December 29, 2008, the court dismissed the complaint after preliminary screening pursuant to 28 U.S.C. § 1915, finding that Petitioner's sanctions did not implicate any protected liberty interests, and that his claims for damages relating to the tobacco charges were barred by Heck v. Humphrey, 512 U.S. 477 (1994). Johnson v. Livingston, C-08-3222 (S.D. Tex.), at (D.E. 9). On appeal, the Fifth Circuit affirmed the district court's ruling. Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010) (per curiam) (unpublished). The Supreme Court denied certiorari on October 4, 2010, Johnson v. Livingston, __ U.S. __, 131 S. Ct. 106 (2010), and then denied rehearing on November 29, 2010. Johnson v. Livingston, __ U.S. __,

131 S. Ct. 689 (2010). On January 24, 2011, Petitioner filed this action. (D.E. 1).

## III. PETITIONER'S ALLEGATIONS

Petitioner alleges that he was wrongfully convicted at his disciplinary hearing despite a lack of any evidence to substantiate his guilt in violation of his due process rights. (D.E. 1).

## IV. DISCUSSION

Respondent moves for summary judgment on the grounds that the petition is untimely, fails to invoke a protected liberty interest, and lacks merit. (D.E. 19).

A.     **The Standard Of Review For Summary Judgment Motions.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases. Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted). Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n,

497 U.S. 871, 888 (1990); Williams, 836 F.2d at 960 (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.     The Petition Is Untimely.**

Respondent moves for summary judgment on grounds of timeliness. (D.E. 19, at 5-8).

**1.     Petitioner's claim was filed outside of the limitations period.**

The AEDPA provides a one-year limitations period for filing a federal habeas petition in district court by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). That period runs from the latest of four alternative dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was

>>initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. Nevertheless, certain actions will toll the limitation period. For example, while a prisoner seeks state review, the AEDPA one-year period will be tolled:

>The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Respondent contends that the limitation period began running on January 2, 2008, the day that Petitioner was found guilty. (D.E. 19, at 6). He concedes that the period was tolled while Petitioner's grievances were pending, but submits that those days did not prevent the petition from being filed about two years too late. (D.E. 19, at 6-7). Petitioner maintains that his claim is not time-barred because his quest for relief pursuant to § 1983 tolled the limitations period. (D.E. 32, at 3).

The limitation period for a habeas petition challenging disciplinary sanctions begins running on the day the sanctions are imposed. See Kimbrell v. Cockrell, 311 F.3d 361, 363-64 (5th Cir. 2002). In Petitioner's case, that was January 2, 2008. DHR, at 2. The parties do not dispute that the period was tolled during the pendency of the grievances, from January 3, 2008 to January 10, 2008, and again between January 29, 2008 and February 14, 2008. DGR, at 2-4; (D.E. 19, at 6-7). The crux of the timeliness controversy is whether the period was tolled during the civil rights litigation. It was not.

First, Congress has explicitly indicated the actions which toll AEDPA's limitations period, and litigation of a § 1983 suit for the same claims later brought in the habeas petition is not one of them. See 28 U.S.C. §§ 2254(b)(1), 2244(d)(2). There is no authority for the proposition that courts may add the good-faith, but mistaken, pursuit of a civil rights action to that list, and ample authority to the contrary. See, e.g., Lopez v. Dretke, No. 4:03-CV-1202, 2004 WL 579651, at *1 (N.D. Tex. Feb. 26, 2004) (unpublished) ("[Petitioner's] civil action for monetary damages under 42 U.S.C. § 1983 did not constitute an 'application for State post-conviction or other collateral review with respect to the pertinent judgment' as cited in § 2244(d)(2)" and thus he "is not entitled to statutory tolling for the § 1983 action."); Redd v. Warden, Winn Corrs. Ctr., No. 08-1513, 2009 WL 3109909, at *8 n.6 (W.D. La. Sept. 25, 2009) (unpublished) ("Petitioner's civil rights suit seeking damages ... could not serve to toll limitations [pursuant to AEDPA] since this action was not a state post-conviction or other collateral attack."); Martin v. Jackson, 152 F. Supp. 2d 1114, 1118 (N.D. Ind. 2001) ("filing a federal lawsuit under § 1983 does not toll the statute" of limitations for habeas petitions) (citation omitted), aff'd sub nom., Martin v. Deuth, 298 F.3d 669 (7th Cir. 2002); Wilson v. Giles, No. 3:04-CV-1149, 2006 WL 3350089, at *4 (M.D. Ala. Nov. 16, 2006) (unpublished) ("the pendency of a federal civil action, such as Wilson's § 1983 suit, does not trigger tolling of the limitation period under § 2244(d)(2)") (citation omitted); Jernigan v. Franklin, No. 02-CV-469, 2006 WL 2524236, at *5 (N.D. Okla. Aug. 30, 2006) (unpublished) ("Petitioner's argument fails because a 42 U.S.C. § 1983 action filed in federal court is not an 'application for State post-conviction or other collateral review'") (citing 28 U.S.C. § 2244(d)(2)), app. dis'd, Jernigan v. Franklin, 214 F. App'x 816 (10th Cir. 2007) (unpublished). In light of these well-reasoned

8

decisions and the absence of any precedent to the contrary, Petitioner's civil rights action did not toll the statute of limitations.

### 2. Petitioner is not entitled to equitable tolling.

Petitioner believes he is entitled to equitable tolling because he diligently pursued relief for his claim in a § 1983 action. (D.E. 32, at 2). Respondent disagrees, arguing that there are no "rare and exceptional circumstances" present to justify application of the doctrine. (D.E. 19, at 8).

Equitable tolling of the limitations period applies principally where the petitioner is actively misled by the respondent about the petition, or is prevented in some extraordinary way from asserting his rights. Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (per curiam) (citation omitted). "To be entitled to equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The doctrine is available "'in rare and exceptional circumstances' where it is necessary to 'preserve[] a [petitioner's] claims when strict application of the statute of limitations would be inequitable.'" Johnson v. Quarterman, 483 F.3d 278, 286 (5th Cir. 2007) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)). The Supreme Court has recently reminded that, when evaluating equitable tolling, habeas "courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." Holland v. Florida, __ U.S. __, 130 S. Ct. 2549, 2263 (2010).

Petitioner acknowledges that his untimeliness resulted from a flawed understanding of

the law, (D.E. 32, at 2), and that excuse has been expressly proscribed. Fierro, 294 F.3d at 682. An independent review of the record does not reveal any other potentially "rare and exceptional" circumstances, Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (citations omitted), and Petitioner is consequently not entitled to equitable tolling. Accordingly, his petition is dismissed as time-barred.

**C.      Petitioner's Challenge Does Not Invoke A Constitutionally Protected Right.**

Respondent argues that Petitioner's sanctions do not implicate any protected liberty interests and that his conviction therefore cannot give rise to a 28 U.S.C. § 2254 claim. (D.E. 19, at 8-10).

A petitioner challenging a disciplinary hearing must show that the punishment intrudes on a protected liberty interest "so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that the state-created right is not arbitrarily abrogated." Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (citation omitted); see also Malchi v. Thaler, 211 F.3d 953, 957 (5th Cir. 2000) ("Federal habeas relief cannot be had 'absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'") (citation omitted). The Supreme Court has explained that "these [liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted). The Fifth Circuit has further explained that "these interests are generally limited to state created regulations or

statutes which affect the quantity of time rather than the quality of time served by a prisoner." Madison, 104 F.3d at 767.

### 1. Petitioner had no liberty interest in his line class status.

As part of the punishment meted out to Petitioner, his line class status was downgraded from S3 to L1. DHR, at 2. The Fifth Circuit has held that prisoners do not have a protected interest in assignment to any good-time credit earning status. Malchi, 211 F.3d at 958-59; Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam). Accordingly, Petitioner fails to state a claim based on the change in his line class.

### 2. Petitioner had no liberty interest in his good-time credits.

Texas state prisoners may become eligible for release either by parole, or through a mandatory supervised release program. Madison, 104 F.3d at 768. Since 1977, Texas law has provided that good conduct time credits "appl[y] only to eligibility for parole or mandatory supervision," rather than an actual reduction in an inmate's sentence. Ex parte Hallmark, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994) (per curiam) (quoting Tex. Rev. Civ. Stat. Art. 6181-1, § 4) (now codified at Tex. Gov't Code § 498.003(a)). An inmate's interest in parole, however, is entirely speculative, and as such, an inmate has no constitutional expectancy in parole. Malchi, 211 F.3d at 957 (quoting Madison, 104 F.3d at 768); see also Orellana v. Kyle, 65 F.3d 29, 32 (5th Cir. 1995) (per curiam) (citations omitted) (petitioner has no liberty interest in obtaining parole in Texas). Thus, to the extent Petitioner claims that his loss of good-time credits adversely affects his parole eligibility, he fails to state a constitutional claim.

The Texas Court of Criminal Appeals has held that inmates who are eligible for release to mandatory supervision do have a protected liberty interest in that release. See Ex parte Geiken,

28 S.W.3d 553, 558-59 (Tex. Crim. App. 2000) (en banc). To have a liberty interest in mandatory supervision, the inmate must be eligible for such supervised release. See Malchi, 211 F.3d at 957-58 (only sanctions that result in the loss of good-time credits for inmates who are eligible for release on mandatory supervision or that otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest) (citations omitted). Pursuant to Texas law, inmates are not eligible for release to mandatory supervision if they are serving a sentence for certain crimes. See Tex. Gov't Code § 508.149; accord Kossie v. Crain, 602 F. Supp. 2d 786, 791 (S.D. Tex. 2009). Petitioner was convicted of aggravated robbery, (D.E. 18-1, at 2-3), and therefore ineligible for mandatory supervision pursuant to state statutes in force at the time he committed his crime. See Jimenez v. State, 32 S.W.3d 233, 234 n.2 (Tex. Crim. App. 2000) (en banc) (reciting former Tex. Code. Crim. Proc. art. 42.18(8)(c)(11)). Thus, to the extent Petitioner claims that his loss of good-time credits adversely affects his eligibility for mandatory supervision, he fails to state a constitutional claim.

### 3. The imposition of solitary confinement does not implicate a protected liberty interest.

Petitioner was sentenced to thirteen days of solitary confinement for the contraband violation. DHR, at 2. Respondent contends that the sanction does not implicate a protected liberty interest, (D.E. 19, at 11), and he is correct. See Sandin, 515 U.S. at 483-84. Accordingly, to the extent Petitioner challenges the imposition of solitary confinement he fails to state a claim and the petition must be dismissed.

### 4. Loss of commissary privileges.

Petitioner lost forty-five days worth of commissary privileges as a result of his conviction. DHR, at 2. Respondent asserts that a challenge to the sanction fails to invoke a

protected liberty interest. (D.E. 19, at 11). Such a penalty does not rise to the level demanded by the due process clause, see Madison, 104 F.3d at 768, and the attack on the loss of commissary privileges is consequently dismissed.

> 5. **The contact visitation restrictions do not implicate due process.**

The disciplinary hearing officer punished Petitioner with the loss of two months of visiting privileges. DHR, at 2. Respondent submits that the temporary revocation does not strip him of any right guaranteed by constitutional due process. (D.E. 19, at 11). Inmates at TDCJ have no constitutional right to visitation. See Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999) (citation omitted). Thus, the deprivation cannot support the petition, and the claim is dismissed.

> 6. **The special cell restriction days do not implicate a protected liberty interest.**

As a result of his conviction, Petitioner had 43 special cell restriction days. DHR, at 2. Respondent maintains that the punishment falls short of triggering due process concerns. (D.E. 19, at 11). The imposition of cell restrictions do not represent incidents outside the normal course of prison life, and it cannot be targeted in a habeas petition. See Madison, 104 F.3d at 768.

> 7. **The dismissal of Petitioner's § 1983 claim does not make the petition cognizable.**

Foregoing any argument that his petition implicates a protected liberty interest, Petitioner instead argues that his claim is cognizable on federal habeas review because, in his view, the Fifth Circuit said so in dismissing his § 1983 appeal. (D.E. 32, at 3). That opinion included the following discussion:

> Johnson argues that the "favorable termination rule" of *Heck* should not apply to his case because he is without a procedural vehicle to challenge his disciplinary convictions. Contrary to

13

> Johnson's argument, he is able to seek federal habeas relief and
> has not shown that he is without a procedural vehicle to challenge
> his disciplinary convictions. *See Randell v. Johnson*, 227 F.3d
> 300, 300-01 (5th Cir. 2000).

Johnson, 360 F. App'x at 532. Understandably, Petitioner expresses frustration that Respondent now claims he cannot raise his claims in a habeas petition when the Fifth Circuit explicitly concluded that he could in denying his earlier action. Granted, it is unclear why the court believed that he was "able to seek federal habeas relief" when the very same factors described in the opinion as foreclosing his § 1983 due process claims now bar his habeas petition. Id. (discussing the lack of liberty interests implicated by Petitioner's sanctions). Nevertheless, the quoted language is dicta. Despite ambiguous language in the dismissal of Petitioner's appeal arguably suggesting otherwise, Randell did not hold that an individual may challenge a conviction through a habeas petition when there is no other procedural vehicle available. In fact, it held the exact opposite: that the "favorable determination" rule announced by Heck bars the award of civil damages even when habeas relief is impossible. Randell, 227 F.3d at 301-02 (citations omitted). Randell remains good law, and Petitioner's inability to bring his claim in a civil rights action therefore does not render it cognizable pursuant to 28 U.S.C. § 2254. Accordingly, the petition is dismissed for failing to invoke a protected liberty interest.

**D.     Petitioner's Claims Are Meritless.**

Petitioner claims that there was no evidence to support the finding of guilty because he never had possession of the tobacco for which he was convicted, as it was seized prior to his ever having the chance to pick it up. (D.E. 32, at 1, 5-6). Respondent argues that Petitioner's claims should be dismissed on the merits because sufficient evidence supports the finding of guilt. (D.E. 19, at 12-13). In federal habeas petitions, review of the evidentiary support for a hearing

officer's decision is extremely limited; due process requires only "some evidence to support the findings made in the disciplinary hearing." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 457 (1985); see also Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001) ("Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision.") (citation omitted). Even where there is no direct evidence and the existing evidence is meager, the findings may still be sufficient to support disciplinary sanction. Hill, 472 U.S. at 457. A federal court should not disturb a hearing officer's decision unless the petitioner can show that it was arbitrary and capricious. Id.; Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (citation omitted). Specifically, the Fifth Circuit has explained that an offense report by itself, written by an officer with firsthand knowledge, is "some evidence" to support the prison disciplinary board's finding of guilt. Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001) (citation omitted).

Petitioner makes a reasonable argument on the merits, and he would likely be entitled to a finding of "no evidence" if he had been charged only with possession of contraband. For he is correct that the mere fact that the package was addressed to him does not show that he ever maintained control over the tobacco. See United States v. Williams, 620 F.3d 483, 489-90 (5th Cir. 2010) (discussing definitions of constructive and actual possession) (citation omitted), cert. denied __ U.S. __, 131 S. Ct. 1534 (2011); see also Broussard, 253 F.3d at 877 (indicating that criminal possession standards apply to prison disciplinary hearings); United States v. Harold, 531 F.2d 704, 705 (5th Cir. 1976) (per curiam) (that an individual is named as the recipient of a package bears on the likelihood of constructive possession only in concert with other factors). As a result, Petitioner is right to believe that no evidence of contraband possession was ever

15

introduced at his hearing.

However, in addition to prohibiting the possession of tobacco, the TDCJ Disciplinary Rules and Procedures for Offenders includes the following note preceding the list of offenses: "A violation of these rules may consist of engaging, attempting to engage in, or conspiring to engage in specified behavior or aiding others in engaging, attempting to engage in, or conspiring to engage in specified behavior."[1] This clause defeats Petitioner's argument, for it essentially enables TDCJ to charge an inmate for attempt, conspiracy, or aiding and abetting with respect to any of the enumerated offenses. See McMullen v. Dir., TDCJ-CID, No. 6:09-CV-426, 2011 WL 1113500, at *4 (E.D. Tex. Feb. 18, 2011) (unpublished) (applying quoted language), adopted by 2011 WL 1100129 (E.D. Tex. Mar. 23, 2011) (unpublished).

As is made clear by the nature of the evidence against Petitioner and by the exchange he had at the beginning of the hearing where he was informed that he was facing charges for having the "intent to possess" contraband, he was not charged with simple possession. Rather, he was charged with some version of conspiracy or aiding and abetting in the possession of contraband, as envisioned by the handbook's prefatory note. Though perhaps not devastating, the fact that the package was addressed to him, along with Officer Williams' testimony, constitutes "some evidence" substantiating that charge. See Harold, 531 F.2d at 705. With prison smuggling as salient a concern as it is, see DeMoss v. Crain, 636 F.3d 145, 153-54 (5th Cir. 2011) (per curiam) (citations omitted), TDCJ can hardly be faulted for drafting and enforcing its disciplinary rules with an eye to attacking the problem in the simplest, least taxing fashion. Petitioner's proposal for a more elaborate investigation tracking potential complicity by prison staff or other inmates

---

[1] http://www.tdcj.state.tx.us/publications/cid/IDisciplinary_Rules_and_Procedures_for_Offenders_April_20 10.pdf (last visited July 13, 2011).

is perhaps a sensible one, but TDCJ was not legally required to conduct it and given finite resources cannot reasonably be forced to.

Petitioner does not articulate in his filings an argument that he was denied adequate notice of the charges against him. However, in light of the liberal construction afforded pro se petitioners, his remarks at the hearing, and the substance of his claims, he can be fairly considered to have advanced such a claim. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974) (citation omitted) (due process requires written notice of the disciplinary action charges, at least 24 hours before the hearing). Given the judicial deference due prison disciplinary determinations, it cannot be said that he was denied his due process right to notice. Petitioner was well aware of the evidence assembled against him, and it is thus difficult to imagine he was unprepared to defend himself against the substance of the charges. Even now, he has never presented an argument for why the evidence did not establish the complicity liability laid out in the prefatory note, thereby confirming that he was given adequate notice of the charges. In sum, Petitioner's entire claim regarding the sufficiency of the evidence is based upon a misreading of the disciplinary rules. As a result, it is dismissed as meritless.

Lastly, Petitioner's contention that he need not establish a protected liberty interest because his conviction is unsupported by any evidence, (D.E. 32, at 9-10), cannot be sustained. First, his conviction is supported by "some evidence." Second, his belief that disciplinary convictions can be challenged through habeas petitions even when the sanctions fail to impinge on protected liberty interests has no basis in the law. Binding case law makes the protected liberty interest a requirement and a prerequisite to any such habeas claim, not an optional bar to apply where discretion suggests its appropriateness. See Madison, 104 F.3d at 768; see also

Malchi, 211 F.3d at 957; Sandin, 515 U.S. at 484. The petition is, accordingly, dismissed.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, a district court ruling on a petitioner's relief may sua sponte rule on a certificate of appealability because it is "[arguably] ... in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious." Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2254 petitioner to demonstrate that "reasonable jurists could debate whether ... the [petition] should have been resolved in a different manner or that the issues presented ... deserve[d] encouragement to proceed further." United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show

both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Reasonable jurists could not debate this denial on substantive or procedural grounds, nor find that the issues presented are adequate to proceed. <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484). Accordingly, Petitioner is not entitled to a certificate of appealability.

## VI. CONCLUSION

For the reasons stated herein, Respondent's motion for summary judgment, (D.E. 19), is GRANTED, and this habeas petition, (D.E. 1), is dismissed. Additionally, Petitioner is denied a certificate of appealability.

ORDERED this 14th day of July 2011.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE